UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS                                     CRIMINAL NUMBER: 21-14-SDD-SDJ

KENTRELL GAULDEN

**MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION OF SUPPRESSION RULING**

Kentrell Gaulden, through undersigned counsel, opposes the Government's Motion for Reconsideration of Suppression Ruling on the following grounds:

In its motion, the Government raises two new arguments that it failed to brief prior to the Court's ruling: (1) the "ownership" argument; and (2) the "public display of criminality" argument. The Government says that, despite having neglected to raise these arguments in pre-hearing opposition, at the hearing, or in its post-hearing brief, it should now be allowed to make the arguments so the Court can correct an alleged "miscarriage of justice." There is no "miscarriage of justice." The arguments the Government is now making were already considered and properly rejected by this Court.

1. *Mr. Gaulden's expectation of privacy does not require ownership under copyright law.*

If this were a copyright infringement case, where Mr. Gaulden was seeking to enjoin the use of video he claimed was his, the technical requirements of the Copyright Act, particularly the "Works Made for Hire" provisions of 17 U.S.C. § 201, would apply. Mr. Gaulden would have to prove that Mr. Ramsey was his employee, or that there was a written agreement between himself and Mr. Ramsey. Even then, according to some courts, there would be some flexibility in the "written agreement" requirement. *See, e.g. Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 4068885 (W.D.La. 2010).

1

Contrary to the Government's assertion, Ms. Boss' testimony about the wire transfer was not the only evidence about who commissioned the video. Ms. Boss did not just testify that Mr. Gaulden asked the bank on behalf of his LLC to wire $5000 to Mr. Ramsey. Ms. Boss also testified that Mr. Gaulden was the only person authorized to make transfers on behalf of the LLC. Transcript, Day 1, pp. 97-98. She further testified that there was nothing in the bank's records to indicate the LLC had any employees. Transcript, Day 1, p. 98. And Atlantic Records Chairman Julie Greenwald testified that Mr. Gaulden, like other major hip hop artists, was accustomed to paying for a videographer to follow him around. Transcript, Day 1, pp. 102-107. This is sufficient support for the Court's observation in its Ruling that "[t]he payment was made for Gaulden's benefit and made on his behalf," Doc. 164, p. 17, FN 94, and for the Court's conclusion that "Ramsey was functioning as Gaulden's cameraman on the day of the arrests." Doc. 164, p. 17.

However, as the Court correctly explains, this is **not** a copyright case. The issue is not whether Mr. Gaulden can prove he has a copyright in the video, but whether he has a reasonable expectation of privacy in the video which society is prepared to recognize for Fourth Amendment purposes. Doc. 164, p. 18, FN 97. This reasonable expectation of privacy may be, but does not have to be, grounded in recognized state law property concepts. *Byrd v. United States*, -- U.S. -, 138 S.Ct. 1518, 1526-1527, 200 L.Ed.2d 805 (2019). It certainly does not have to be grounded in the Copyright Act, which does not preempt and does not even govern property rights and property expectations outside of the specific issue of ownership of the copyright. *Rodrigue v. Rodrigue*, 218 F.3d 432, 435-436 (5th Cir. 2000). As the Court points out, the common law property ideas behind the "Works Made for Hire" doctrine, and the societal expectation that one who commissions another to create something is entitled to that thing upon its completion, existed long before the

2

doctrine was codified and specific evidentiary requirements were set forth. Doc. 164, p. 18, FN 98 and cases cited therein.

Even if the LLC owned the video, this would not preclude a reasonable expectation of privacy on the part of Mr. Gaulden – based not the LLC's expectation of privacy but on his own expectation of privacy. We know that the driver of a vehicle may have a reasonable expectation of privacy in the vehicle even if he is neither the owner nor the listed authorized driver. *Byrd v. United States*, -- U.S. -, 138 S.Ct. 1518, 200 L.Ed.2d 805 (2019). We know that an overnight guest may have a reasonable expectation of privacy in his host's premises even though he is neither the owner nor the renter of the premises. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The Government's argument that the existence of an LLC precludes Mr. Gaulden from asserting a privacy interest in the video is based on a misreading of Fifth Circuit jurisprudence.

The Government's quote from *United States v. Britt*, 508 F.2d 1052, 1055 (5th Cir. 1975) is taken out of context. What immediately precedes the government's quote is the following:

> We have held that under certain circumstances a corporate officer or employee **can** be a person aggrieved by a search of corporate premises and a seizure of corporate property. *Henzel v. United States,* 296 F.2d 650 (5th Cir. 1961) (emphasis added). The facts of this case, however, are much different from those of *Henzel.* There
>
> > . . . the appellant was the organizer, sole stockholder and president of Chemoil Corporation. Appellant prepared much of the material seized, and this material was kept in his office along with some of his personal belongings. Although he was temporarily absent from his office when it was searched, appellant spent the greater part of every average working day there. Finally, it is undisputed that the search by the Postal Inspector was 'directed at' the appellant.
>
> *Henzel*, at 653. Here, although Britt was president of Fitts, he was not its sole stockholder, the documents seized were normal corporate records not prepared personally by him, and the area searched at 1819 Peachtree Road was described as a storage area. Furthermore, there is no evidence that Britt spent any of his time working in the storage area— or in any other space at 1819 Peachtree for that matter— or that any of the material seized there was taken from his personal desk or briefcase or files. He was in the hospital at the time of the search and had been for several months prior to it. Furthermore,

3

there is nothing in the record which would indicate that the searches, either at 3379 or 1819, were directed at him rather than at corporate activity generally. Under such circumstances, we conclude that we should apply the normal rule.

*Id.* at 1055-1056.  In other words, under both *Henzel* and *Britt*, a defendant **can** have standing to assert a privacy interest in property owned by his corporation if he can show he is asserting his own privacy interest rather than the corporation's. *Henzel* and *Britt* are still followed.  *See United States v. Johnson*, 2021 WL 4098611 (W.D.La. 2021).

The Court properly concluded that Mr. Gaulden owned the video, and that regardless of whether he owned the video he had a privacy interest in the video.

2. <u>Mr. Gaulden has a privacy interest is in the SD Card Media itself without regard to what the media depicts.</u>

The Government ignores the core of the Court's Ruling, which is that the warrant the police obtained before searching the SD card containing the video did not actually authorize a search of the contents of the card, was invalid on its face, was not saved by any good faith exception, and was based on materially misleading information recklessly supplied by the police. Doc. 164, pp. 20-48.  That the illegally searched card turns out to contain video some of which the Government claims shows criminal activity (though the criminality of that activity is precisely what is in dispute) cannot retroactively justify a grievously illegal and unconstitutional search. If it could, we would no longer have a Fourth Amendment. The police could routinely search and seize evidence without regard to warrants, probable cause, property rights, or privacy rights, and as long as the evidence depicted conduct in public locations it would be okay. But as the Court makes clear, the sole purpose of the exclusionary rule is to deter Fourth Amendment violations, not to encourage them.   Doc. 164, p. 43 and citations therein.

The Government argues that the video it wants to use shows Mr. Gaulden engaged in activity which is both public and criminal; therefore, Mr. Gaulden could not have a privacy interest

4

in the video which shows such activity. But the Government is confusing the video itself with the activity shown on the video. Obviously, nobody has a reasonable expectation of privacy in anything he or she chooses to do on a public street, in full view of anybody who happens to come along. If a bystander – or the police for that matter – had taken a video of Mr. Gaulden on the street, Mr. Gaulden would have no privacy interest in that video. But the video of Mr. Gaulden on the street was not taken by a bystander, or by the police; it was taken by an agent of Mr. Gaulden at Mr. Gaulden's behest, and paid for by Mr. Gaulden.

The Court did not conclude that Mr. Gaulden had a privacy interest in the **activity** he was engaged in on the street, whether criminal or not. Rather, the Court concluded that Mr. Gaulden had a privacy interest in the **video** he commissioned which was illegally downloaded from the SD card. This conclusion is entirely in accordance with *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Government cites only the first part of the seminal quote from *Katz*. The full quote is: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection . . . . **But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."** *Id.* (emphasis added).

The Government claims that "Gaulden has no more right to privacy in the videos made by Ramsey (the agent of a third-party corporation) of his activities in public than he would have in videos of the same events shot by other third parties or by a pole camera." But, again, this Court already concluded that "Ramsey was functioning as Gaulden's cameraman on the day of the arrests," Doc. 164, p. 17, and that Mr. Gaulden had a privacy interest not in his "activities in public" but in the video he commissioned from Mr. Ramsey.

The flaw in the government's position is easily seen when applied to another, more common situation involving the search of photographs located on a suspect's cell phone. In such a situation, the illegal search of the cellphone is not retroactively justified merely by the recovery of incriminating photos taken in a public location. The privacy interest does not lie in what the photos depict but in the cellphone itself. *See Riley v. California*, 573 U.S. 373, 375, 134 S.Ct. 273, 189 L.Ed.2d 430 (2014). If the government illegally accesses the information on the phone, the government is not allowed to use the evidence regardless of what the photos on it might depict. To hold otherwise would render the Fourth Amendment an impotent bulwark against unconstitutional search and seizure of digital media. Digital media is the 21st century version of a hidden safe serving as a repository for our most sensitive, private information, and the government's ability to access to such information should be limited accordingly. The Supreme Court has "historically recognized that the warrant requirement is 'an important working part of our machinery of government,' not merely 'an inconvenience to be somehow 'weighed' against the claims of police efficiency.'" *Riley v. California*, 573 U.S. 373, 401, 134 S.Ct. 273, 189 L.Ed.2d 430 (2014), quoting *Coolidge v. New Hampshire*, 403 U. S. 443, 481, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

3. *Conclusion*

Reconsideration is not warranted. The Court's Ruling was correct and not a "miscarriage of justice." The Government's Motion should be denied.

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ James P. Manasseh
JAMES P. MANASSEH
Louisiana Bar No. 19022
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email: jimmy@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ André Bélanger
ANDRÉ BÉLANGER
Louisiana Bar No. 26797
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email: andre@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ Tanner C. Woods
TANNER C. WOODS
Louisiana Bar No. 37376
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email : tanner@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ Ian F. Hipwell
IAN F. HIPWELL
Louisiana Bar No. 06947
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email : ian@manassehandgill.com

Respectfully Submitted:

**THE FINDLING LAW FIRM, P.L.C.**

/s/ Drew Findling
DREW FINDLING
Georgia Bar No. 260425 (Pro Hoc Vice)
Attorney for Defendant
3490 Piedmont Road, N.E., Ste 600
Atlanta, GA 30305
(404) 460-4500 (Telephone)
(404) 460-4501 (Facsimile)
Email: drew@findlinglaw.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ Yigal Bander
YIGAL BANDER
Louisiana Bar No. 24953
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email : yigal@manassehandgill.com

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL ACTION |
| VERSUS | |
| | NO. 21-14-SDD-SDJ |
| KENTRELL GAULDEN | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing Memorandum in Opposition to Government's Motion For Reconsideration of Suppression Ruling with the Clerk of Court by using the CM/ECF, which will send a copy to opposing counsel in the United States Attorney's Office.

Baton Rouge, Louisiana this 12th day of April, 2022.

/s/ James P. Manasseh
JAMES P. MANASSEH

8