**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| *versus* : | |
| : | CRIMINAL NO. 21-14-SDD-SDJ |
| KENTRELL D. GAULDEN : | |
| a/k/a "YoungBoy Never Broke Again" : | |
| a/k/a "NBA YoungBoy" : | |
| a/k/a "YB" : | |

**UNITED STATES' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR
RECONSIDERATION OF SUPPRESSION RULING**

In responding to the Government's motion for reconsideration, defendant Gaulden clings to the idea that he has a reasonable expectation of privacy in the seized videos because his company commissioned them. That position, however, is simply contrary to the law.

**I.    The illegality of the search and seizure is irrelevant to the standing question.**

Gaulden contends that, by arguing that he has no expectation of privacy in the content of the videos, the United States "ignores" the Court's ruling that the search and seizure of the videos was illegal. See Def. Opp. (Doc. 177) at 4. He interprets the United States' motion as seeking to "retroactively justify a grievously illegal and unconstitutional search." See id.

The motion for reconsideration does no such thing. It urges the Court to reconsider its holding that Gaulden has standing to challenge the search and seizure of the videos, not to reconsider its ruling that the search and seizure were

illegal. The exclusionary rule does not permit the suppression of even illegally obtained evidence unless the defendant can demonstrate standing. At this stage of the game—where the only issue is standing—whether the search and seizure were illegal is beside the point.

## II. Gaulden did not prove, and this Court did not find, that Gaulden commissioned the videos in his personal capacity.

There is no dispute that Marvin Ramsey was Gaulden's cameraman. There is also no dispute that Big38Enterprise, a limited liability company, paid Ramsey to be Gaulden's cameraman. Thus, under basic legal principles, any property interests derived from the commissioning of the videos belong to the company, not to Gaulden—even if the videos were commissioned "for Gaulden's benefit" and "on his behalf." See Ruling (Doc. 164) at 17 n.94.

Gaulden nevertheless insists that he "owned the video[s]" produced by Ramsey. See Def. Opp. (Doc. 177) at 4. Tellingly, he fails to explain how that could be, given that the company paid for Ramsey's services. Although Gaulden points to certain evidence in the record as establishing that the videos belong to him (and not the company), he provides no analysis whatsoever. He simply asserts that the evidence "is sufficient support" for the Court's findings that Ramsey was his cameraman and that the company's payment to Ramsey was "made for Gaulden's benefit and made on his behalf." Id. at 2.

The evidence referenced by Gaulden falls far short of proving that he owns the videos. First, Gaulden notes that Karen Boss, the bank representative, testified that he was the only person authorized to make transfers on behalf of the company.

See id. That, of course, does not suggest that Gaulden authorized the transfer of company funds to Ramsey in his *personal* capacity. To the contrary, it suggests that Gaulden was acting as a duly authorized agent of the company when he transferred company funds to Ramsey. Second, Gaulden points out that Boss testified that there was nothing in the bank files to indicate that the company has any employees. See id. But that says nothing about whether Ramsey was engaged by the company or by Gaulden personally. Everyone agrees that Ramsey was paid by the company to be Gaulden's cameraman. If Ramsey was an employee of the company, then Boss's testimony was just wrong (because there was a transfer to the employee in the bank's files). If Ramsey was an independent contractor or some other type of service provider, the testimony about employees was simply irrelevant. Regardless, Boss's testimony about bank files in no way implies that Ramsey worked for Gaulden *personally*. Third, Gaulden relies on the testimony of Julie Greenwald, the Atlantic Records president, that he, "like other major hip hop artists, was accustomed to paying for a videographer to follow him around." See id. Notably, however, Greenwald did *not* testify that Gaulden paid videographers with his own funds, that he paid them in his personal capacity, or that she even had any knowledge about the circumstances under which such videographers were hired. So, her testimony does not prove that Gaulden *personally* engaged Ramsey. In the end, there is absolutely *no* evidence that Ramsey's work was commissioned by Gaulden in his individual capacity rather than by the company.

Gaulden sets great store by the Court's findings that Ramsey was "Gaulden's cameraman" and that the payment to Ramsey was "for Gaulden's benefit" and "on his behalf." But those findings do not mean that Ramsey was Gaulden's *personal* videographer as opposed to his corporate videographer. Consider this example. Local media recently reported that LSU's head women's basketball coach Kim Mulkey hired a new assistant coach, Gary Redus.[1] No one reading the news would think that Coach Mulkey hired Redus in her personal capacity. And no one hearing a reference to Redus as Coach Mulkey's new assistant would think that Redus works for Coach Mulkey personally and not for LSU. In the same vein, the Court's reference to Ramsey as "Gaulden's cameraman" does not connote that Ramsey worked for Gaulden personally. In fact, the Court's ruling seems to acknowledge that it was the company that engaged Ramsey. See Ruling (Doc. 164) at 15 ("Gaulden's company paid Ramsey for cameraman services" and "Atlantic Records has, at some point, reimbursed Gaulden's company for the costs of media"), 17 n.94 ("Gaulden's company made the payment rather than Gaulden individually"). Rather than failing to recognize that Ramsey's work was commissioned by the company and not by Gaulden personally, the Court merely concluded that the distinction was legally irrelevant. Id. at 17 n.94.

---

[1] See "LSU women's basketball, Kim Mulkey adds SMU assistant Gary Redus II to coaching staff," The Daily Advertiser (April 20, 2022), located at https://www.theadvertiser.com/story/sports/college/lsu/2022/04/20/lsu-womens-basketball-kim-mulkey-gary-redus-ii-assistant-coach/7382742001/ (last visited Apr. 21, 2022).

Given the unrebutted evidence that the videos were commissioned by the company, there is no basis for finding that Gaulden has any personal property rights—copyright or otherwise—in the videos. It is hornbook law—which Gaulden does not dispute—that corporate property belongs to the corporation and not to the corporation's owners or officers.

### III. Gaulden cannot claim a personal privacy interest in the videos based on the company's commissioning of the videos.

As the United States recognized in its reconsideration memorandum, "Gaulden's lack of a property interest in the videos is not alone dispositive of the standing issue. Even without a property interest, Gaulden could demonstrate standing if he could establish a reasonable expectation of privacy in the videos themselves or in the place from which they were seized."[2] U.S. Memo. (Doc. 175-1) at 4. As explained by the Supreme Court, a reasonable expectation of privacy "must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." See Rakas v. Illinois, 439 U.S. 128, 144 n.12 (1978).

In his opposition, Gaulden apparently concedes that his asserted privacy interest in the videos does not stem from the personal nature of their content. See Def. Opp. (Doc. 177) at 4-6. His argument is that, because "he commissioned" the videos, he has "his own expectation of privacy" in the videos even if any and all property interests belong to the corporation and not to him. See id. at 3-5. The only

---

[2] Gaulden represents that we argued in our reconsideration memorandum "that the existence of an LLC precludes [him] from asserting a privacy interest in the video[s]." Def. Opp. at 3. As the quoted language from our memorandum makes clear, that is not correct.

"source" he identifies for his alleged privacy interest is a "societal expectation" based on copyright law that "one who commissions another to create something is entitled to that thing upon completion." See id. at 2-3 (citing Ruling (Doc. 164) at 18). For a number of reasons, Gaulden's argument is unpersuasive.

In the first place, copyright law does not endow Gaulden with any personal interest in the videos. While the work-made-for-hire provisions of the Copyright Act provide that, under certain circumstances, an entity that commissions work is entitled to a copyright interest in the work, the provisions do not give an agent of the commissioning entity his own personal interest in the work. Additionally, there is no factual basis for believing that the work-made-for-hire provisions even apply here. See U.S. Memo. (Doc. 175-1) at 3 n.3. And, the common law of copyright, which is also relied on by Gaulden, cannot give Gaulden an interest in the videos because it has been superseded by the Copyright Act. See id.

Gaulden maintains that, even if copyright law does not grant him a property interest in the videos, it nevertheless creates a "societal expectation" that vests him with a privacy interest. But that doesn't make sense. How could copyright law create an understanding that is "recognized and permitted by society," see Rakas, 439 U.S. at 144 n.12, if the understanding is directly contrary to that same law? Whatever societal expectations are created by copyright law can only be expectations that are consistent with the law. Because copyright law does not give Gaulden any interest in the videos, it cannot be the source of any legitimate expectation of privacy.

In any event, there is no "societal expectation"—derived from copyright law or otherwise—that someone who commissions a work on behalf of a corporation obtains a personal expectation of privacy in the work. Returning to our earlier example, suppose that Coach Mulkey directed Coach Redus to develop drills and then film the team performing the drills at practice. No one would expect that Coach Mulkey would have a *personal* privacy interest in any drills and videos located on Coach Redus's phone—the privacy interest would belong to Coach Redus (who possesses the phone and created the drills and videos) and to LSU (who employs Coach Redus and owns his work product). Similarly, Gaulden has no personal privacy interest in videos created and possessed by Ramsey on behalf of the corporation, even if Gaulden directed Ramsey to shoot the videos. Significantly, Gaulden provides no support—not a case, a work of literature, or an anecdote—for his claim that members of our society expect that a corporate agent has a personal right of privacy in work commissioned for the corporation.

Gaulden argues that "a defendant **can** have standing to assert a privacy interest in property owned by his corporation if he can show he is asserting his own privacy interest rather than the corporation's."[3] Def. Opp. (Doc. 177) at 4. That is absolutely true, as noted above and in the United States' reconsideration memorandum. But Gaulden offers no authority for the position that a corporate

---

[3] It is worth noting that, as pointed out in our original memorandum, there is no legal or factual basis for concluding that the corporation actually has any property rights in the videos. See U.S. Memo. (Doc. 175-1) at 3 n.3. Because Gaulden presented no evidence that Ramsey was a corporate employee within the meaning of the Copyright Act or that there was a written agreement between Ramsey and the corporation providing for a corporate copyright, the corporation has no claim of a property interest under the Copyright Act. There is therefore no basis to find that the videos themselves or any intellectual property interests in the videos belong to anyone other than Ramsey.

officer has standing in corporate records because he commissioned their creation. And, Gaulden ignores the general rule that a corporate officer or owner—even a sole shareholder—does *not* have a personal privacy interest in corporate records that are not kept in the defendant's personal workspace. See Williams v. Kunze, 806 F.2d 594, 600 (5th Cir. 1986) (defendant did not have reasonable expectation of privacy in corporate records kept in common file room). In Henzel v. United States, 296 F.2d 650 (5th Cir. 1961), which is relied on by Gaulden, the Fifth Circuit found a corporate officer and owner to have a privacy interest in corporate records based on four factors: (1) the defendant was the "organizer, sole stockholder, and president" of the corporation; (2) the defendant "prepared much of the material seized"; (3) the records were seized from his office; and (4) he was the target of the search. This case, of course, is nothing like Henzel. Gaulden did not prepare the videos, and the videos were not found in Gaulden's personal office or in another area personal to him, such as his phone. In fact, the videos were not even in the possession of the company—they were found in Ramsey's property. Because the Supreme Court rejected the target theory of standing after Henzel was decided, see Rakas, 439 U.S. at 134-138, the only factor in favor of standing here is Gaulden's status as an owner, officer, or agent of the corporation.[4] Under Williams, that is not enough to establish standing.

---

[4] As noted in the United States' reconsideration memorandum, the record does not contain any evidence establishing Gaulden's position with the company, except that he is authorized to transfer corporate funds. See U.S. Memo. (Doc. 175-1) at 2 n.2.

The other case law cited by Gaulden provides him no support. In <u>Byrd v. United States</u>, 138 S. Ct. 1518, 1524 (2018), the Supreme Court held that, "as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." In this case, Gaulden did not have possession and control of the videos or the places where they were found. In <u>Minnesota v. Olson</u>, 495 U.S. 91, 96-97 (1990), the Supreme Court held that the defendant's "status as an overnight guest [was] alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." The Court recognized that merely being legitimately on the premises searched is not alone sufficient to create standing, but it concluded that "society recognizes that a houseguest has a legitimate expectation of privacy in his host's home." <u>Id</u>. at 97-98. In this case, Gaulden did not legitimately possess or occupy the invaded places, nor was his relationship to the videos rooted in "a longstanding social custom that serves functions recognized as valuable by society." <u>See id</u>. at 98. In <u>Riley v. California</u>, 573 U.S. 373 (2014), which was not a case about standing, the Supreme Court held that police may not conduct a warrantless search of the data on a cell phone seized from an arrestee. <u>Id</u>. at 386. The Court reasoned that, because cell phones contain "vast quantities of personal information," a cell phone search "bears little resemblance" to a typical search incident to arrest. <u>Id</u>. <u>Riley</u> adds nothing to the discussion here. Even before <u>Riley</u>, it was understood that the search of a suspect's cell phone or other electronic device invades the suspect's legitimate

expectation of privacy. In this case, as the Court has already held, the searches of the devices did not affect Gaulden's rights because the searched devices did not belong to Gaulden and were not in his lawful possession.

## IV. Conclusion

Gaulden did not personally commission Ramsey's videos—he paid for Ramsey's videography services with funds belonging to Big38Enterprise. As a result, any property and privacy interests derived from commissioning the videos belong to Big38Enterprise. Because commissioning of the videos is the *only* basis on which Gaulden claims a personal expectation of privacy, he has failed to establish standing, and this Court should reconsider its suppression ruling and hold that the video evidence is admissible at trial.

Respectfully submitted,

UNITED STATES OF AMERICA, by

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY

/s/ William K. Morris
William K. Morris, LBN 28694
M. Patricia Jones, LBN 18543
Assistant United States Attorneys
777 Florida Street, Suite 208
Baton Rouge, Louisiana  70801
Telephone: (225) 389-0443
E-mail: william.morris2@usdoj.gov
E-mail: patricia.jones4@usdoj.gov

/s/ Kenneth P. Kaplan
Kenneth P. Kaplan, DCBN 460614
Damaré Theriot, DCBN 1013801
Trial Attorneys
Organized Crime and Gang Section
U.S. Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 514-0032
E-mail: damare.theriot@usdoj.gov
E-mail: kenneth.kaplan@usdoj.gov